UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANNIE M. MAYBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-0060-RLY-DKL |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Annie M. Mayberry seeks judicial review of the final decision of the Acting Commissioner of Social Security denying her application for a period of disability, disability insurance benefits, and supplemental security income. The Honorable Richard L. Young, Chief Judge, designated the undersigned to issue a report and recommendation on Plaintiff's request for review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Having considered the record and the parties' arguments, the undersigned makes the following report and recommendation.

I.     BACKGROUND

Mayberry alleges that she became disabled on July 5, 2012. Her claims were denied initially and on reconsideration. She appeared and testified at a hearing before an Administrative Law Judge in June 2014. A vocational expert ("VE") also testified at

the hearing. A month later, the ALJ issued an unfavorable decision. The Appeals Council denied review, making the ALJ's decision the final decision of the Social Security Administration.

Mayberry challenges the ALJ's decision with regard to her back impairments and his RFC finding as it relates to her pain and weakness. Consequently, the evidence set forth below focuses on those impairments.

In October 2012, Ami Rice, M.D., conducted a consultative physical examination of Mayberry for the Disability Determination Bureau. (R. 694-702). Mayberry's posture was slightly rounded and her gait was "slightly antalgic"—meaning that she had a slight limp to avoid pain on weight bearing—but she did not require an assistive device. (R. 701.) Mayberry had the ability to stand on her heels and toes, squat to the floor, and walk with a tandem heel-to-toe gait. There was no joint inflammation or effusion. Mayberry could get on and off the examination table without assistance. Dr. Rice found that the clinical evidence did not support the need for an ambulatory aid. Mayberry performed straight leg raising tests in a seated and a supine position without radiating back pain, she had no spinal or paraspinal tenderness, and she was able to lay straight back onto the examination table. She had limited range of motion in her lumbar and cervical spine and in raising her right arm, but full range of motion in her lower extremities. (R. 694, 701.) Her muscle strength and tone were normal without atrophy or spasm. Her motor and sensory systems were intact, and her coordination was normal. However, her deep tendon reflexes were unable to elicit patellar reflexes bilaterally. Dr. Rice found based on her examination that Mayberry was "able to perform normal movements like walking,

2

sitting, squatting, bending, [and] hand movements," among others. (R. 702.) The physician concluded that "[n]o functional limitations are noted." (*Id.*)

December 2012 x-rays of Mayberry's spine showed mild lumbosacral disc degeneration at L5-S1 with no compression fracture and mild disc degeneration at C6-C7 with associated marginal osteophytes (bony outgrowths common in degenerative joint disease). (R. 703.)

In December 2012, Bruce Whitley, M.D., a state agency physician, reviewed the medical evidence and assessed Mayberry's physical functional capacity. He completed a Form SSA-831, concluding that none of Mayberry's impairments met or equaled any condition in the listings. (R. 85-86.) Dr. Whitley determined that Mayberry could lift twenty pounds occasionally, ten pounds frequently, and stand, walk and sit about six hours in an eight-hour work day. (R. 95-96.) He limited her to occasionally climbing ramps and stairs; occasionally climbing ladders, ropes, and scaffolds; frequently balancing, stooping and kneeling; and occasionally crouching and crawling. He also indicated that she should avoid concentrated exposure to humidity, fumes, odors, dust, gases, and poor ventilation. (R. 97.)

In May 2013, J. Valentine Corcoran, M.D., a state agency physician, reviewed the updated medical records and affirmed Dr. Whitley's conclusions about Mayberry's functional capacity. (R. 118-20.) Dr. Corcoran also completed a Form SSA-831, finding that Mayberry did not meet or equal the criteria of any listing. (R. 87-88.)

From May 2013 to April 2014, Phillip Ferguson, M.D., treated Mayberry for back pain and other conditions. (R. 809-930.) In July 2013, on examination, Mayberry had

3

normal ranges of back motion, normal gait, normal strength, normal sensory responses, and no tenderness, swelling or deformity. (R. 880.) She had no focal defects and normal motor function. Although the doctor noted that Mayberry had a long history of back pain, he did not prescribe medication or other treatment for back pain. (R. 878, 884.)

In August 2013, Mayberry complained about lower back pain and reported it had been ongoing for years but had worsened in the last two to three months. She reported that the pain was shooting into her right leg. (R. 861.) On examination, her shoulder was tender with motion and she had tenderness on palpation of her lower back, but she had full range of motion. (R. 865.) She had a positive straight leg raising test (indicating compression or irritation of one or more of the nerve roots leading to the sciatic nerve). Her strength was 4/5 on the right and 5/5 on the left. Sensation was normal. (*Id.*) It was noted that she had back surgery in 2000 and had received an epidural injection. It was also noted that her last CT scan was in 2005 and it showed L4-L5 disc protrusion and S1 nerve impingement. It was recommended that she be reevaluated by imaging of her back. (R. 867.)

Later that month, Mayberry had a magnetic resonance imaging (MRI) scan of her lumbosacral spine. (R. 922-23.) The MRI showed no spinal canal stenosis of the lumbosacral spine, and generally mild abnormalities, such as mild disc bulges, mild degeneration, and mild foraminal stenosis. (R. 922.) However, at L5-S1 the MRI showed a moderate diffuse disc bulge and posterior osteophyte that contacted and displaced the S1 nerve root; moderate degeneration, and moderate to severe foraminal stenosis. (*Id.*)

4

The impression from the MRI was multilevel degenerative disease of the lumbar spine, most notable at L5-S1.  (R. 923.)

In early September 2013, Mayberry was seen by Dr. Ferguson and reported that she had been hospitalized two weeks before for complaints of low back pain, shortness of breath, swelling of her legs, and chest pain.  (R. 851.)  On examination, Dr. Ferguson noted that Mayberry had normal range of motion, normal strength, no tenderness, no swelling, nor deformity, and normal gait.  She had normal sensory responses, normal motor function, and no focal defects.  (R. 852.)  He noted that her back x-ray "did not reveal any evidence of severe degenerative joint disease" and that her MRI was negative for nerve root compression or spinal stenosis (R. 853), concluding that it "was unremarkable for explanation of her chronic back pain."  (R. 851.)  His plan to treat her back pain was to continue exercise, diet, and Tylenol.  (R. 853.)

In December 2013, Mayberry was seen by her primary care physician for diabetes follow-up.  She reported that she was working on increasing her activity, but it was painful to do a lot of activity.  (R. 830.)

In mid-January 2014, Mayberry sought treatment with Dr. Ferguson with a chief complaint of shortness of breath and chest pain.  He noted that she "does have chronic low back pain which is unrelenting."  (R. 825.)  On examination, however, she had normal range of motion, no tenderness, normal gait, normal sensory responses, normal motor function, and no focal defects.  (R. 827.)

Later that month, Dr. Andrew Schmelz, M.D., of Indiana University Health Family Medicine, reported that Mayberry had been in his office for routine medical care.  (R.

5

795.) His note indicated that she could return to work the next day (January 22) "with no restrictions." (*Id.*)

At the hearing, Mayberry testified that she lived by herself in an apartment. (R. 54, 57.) She had four, adult children, ten grandchildren and two great-grandchildren. (R. 55-56.) She spent time with her grandchildren, baking cookies "a little bit." (R. 57.) She cooked her own meals (R. 57), mostly in a crock pot or skillet. (R. 71.) At times, she cooked dinner for her grandchildren. (*Id.*) Mayberry attended church twice a week and cooked meals for the church. (R. 58-59.) She had sung with the choir but stopped about two months before the hearing because of shortness of breath. (R. 59.) Her friend took her to the grocery store. She was able to clean her small apartment in about one hour, but she needed to take two fifteen- or twenty-minute breaks while doing so. (R. 71.) Her daughter helped her if she "need[ed] something done around the house." (R. 59.)

Mayberry was taking BC powder[1] for pain, against her doctor's advice not to take it because of her chronic kidney disease. (R. 60.) When asked if her doctor offered her some other medication for the pain, Mayberry said "it don't do the pain no good. And then I don't want to get addicted to it." (R. 62.) She testified that she has back pain every day; she also has neck pain. She has received cortisone shots in her back and had one about two or three weeks before the hearing (around the end of May or beginning of June 2014). She testified that the cortisone "holds out for like two or three months sometimes. Sometimes a little bit shorter." (R. 66-67.) Her last injection (other than the one just before

---

[1] BC Powder is an over-the-counter pain reliever that contains 845 mg of aspirin and 65 mg caffeine.

6

the hearing) was in January or February of 2014. (R. 67.) She used a cane about ten times per month, explaining when she got a "charley horse" in her leg, and stated that she "can't get around too good. I'm real slow." (R. 69-70.) She used a walker when she couldn't get out of bed, which she said was "[m]aybe three or four times a month." (R. 70.)

The VE testified that her testimony would be consistent with the information found in the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations. She also stated that the region to which she referred was the State of Indiana. (R. 78.) The VE reviewed Mayberry's work history provided by the Social Security Administration and listened to her testimony at the hearing. (*Id.*)

The VE testified that Mayberry's work as a mail sorter and package sorter were at the light exertional level, but as reported by Mayberry, the package sorter was at the medium level. The security guard and phlebotomist were also at the light exertional level. (R. 79.)

The ALJ asked the VE the following hypothetical question:

[C]onsider … an individual capable of the full range of light work, with occasional climbing of ramps and stairs, occasional ladders, ropes or scaffolding. Frequent balancing, stooping and kneeling. Occasional crouching and crawling and occasional exposure to extremes of temperature, including cold, heat and humidity. No more than occasional exposure to airborne irritants, including but not limited to fumes, odors, dusts and gases. With that RFC, would the claimant be able to perform Mayberry's past work in the national and regional economy?

7

(R. 79-80.) The VE responded that the individual could perform work as a security guard and a phlebotomist, as well as a mail sorter and package sorter as typically performed in the national economy, but not as Mayberry reported they were actually performed. (R. 80.) The VE also testified that there were other occupations that such an individual could perform, including tanning salon attendant, furniture retail clerk, and information clerk. (R. 80-81.)

The ALJ determined that Mayberry met the insured requirements of the Social Security Act through December 31, 2017 (R. 14); as a result, she had to establish disability on or before that date to be entitled to disability insurance benefits. Using the five-step process for analyzing disability claims, *see* 20 C.F.R. §§ 404.1520(a)(4) (DIB), 416.920(a)(4) (SSI), the ALJ found at steps one and two that Mayberry had not engaged in substantial gainful activity since July 5, 2012, her alleged onset date, and that she suffered from severe impairments of obesity, mild arthritis, mild chronic obstructive pulmonary disease, and degenerative disc disease of the cervical and lumbar spine. (R. 14-15.) The ALJ also found that she had several non-severe impairments. (R. 15-16.) After finding that none of the impairments met or medically equaled a listed impairment, which would be presumptively disabling, the ALJ assessed Mayberry's residual functional capacity ("RFC"). (R. 19-21.)

The ALJ found that Mayberry had the RFC to perform light work "except she can occasionally crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds," "can frequently balance, stoop and kneel," and "can have occasional exposure to extreme cold, extreme heat, humidity and airborne irritants including but not limited to fumes, odors,

dusts and gases." (R. 21.) At steps four and five, the ALJ found that Mayberry was able to perform her past relevant work as a mail sorter, conveyor belt package sorter, security guard, and phlebotomist. (R. 26.) Therefore, the ALJ concluded that Mayberry was not under a disability at any time from her alleged onset date through the date of the decision on July 25, 2014. (R. 27-28.)

**II.    DISCUSSION**

Title II of the Social Security Act provides for the payment of benefits to persons who have contributed to the program and suffer from a physical or mental disability. Title XVI of the Act provides for the payment of benefits to indigent persons under the Supplemental Security Income (SSI) program. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). "Disability" is defined by the Act as the "inability to engage in any substantial gainful activity [because] of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last … not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

Judicial review of the ALJ's decision is limited. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). The decision will be upheld so long as it applies the correct legal standards and is supported by substantial evidence. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp*, 795 F.3d at 718 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). A court may not reweigh the facts or evidence or make its own credibility determinations. *Id.* An ALJ does not have to mention every

piece of evidence, but must build a "logical bridge" from the evidence to her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Mayberry argues that substantial evidence fails to support the ALJ's determination at step 3 that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1. A claimant is eligible for benefits if she has a condition that meets or equals a listed impairment. *Kastner v. Astrue*, 697 F.3d 642, 646-47 (7th Cir. 2012). "Each listing has a set of criteria which must be met for an impairment to be deemed conclusively disabling." *Id.* at 647. Mayberry contends she established that her combined impairments met or medically equaled Listing 1.04A. To the extent she would argue that she also satisfied subparts B and C of the listing, because she neither asserted nor developed such an argument, the issue is waived. *See, e.g.*, *White v. Colvin*, 2015 WL 1013525, at *6 (S.D. Ind. Mar. 9, 2015).

> Listing 1.04(A) provides:
>
> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, [4] positive straight-leg raising test (sitting and supine) [.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). The ALJ wrote:

> The claimant's neck and back impairments do not meet Listing 1.04, *Disorders of the Spine*, because the evidence of record does not demonstrate

> current compromise of a nerve root (including the cauda eqina [sic]) or the spinal cord with additional findings of … evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, positive straight-leg raising ….

(R. 19.) The ALJ's reasoning is flawed: The Listing does not require that the compromise of a nerve root and other findings be "current." To be sure, the regulation imposes a duration requirement that "the impairment have lasted or must be expected to last for a continuous period of at least 12 months." 29 C.F.R. § 404.1509; *see also* 42 U.S.C. § 423(d)(1)(A). But the ALJ did not make a finding that Mayberry failed to meet the duration requirement. If that is what the ALJ meant to find, it is unclear from her decision. The Court can review only the reasons articulated by the ALJ and cannot uphold the decision based on reasons that she did not mention. *See, e.g.*, *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

To the extent that the ALJ intended to write that the record did not demonstrate simultaneous rather than current presence of the necessary findings, a circuit court has rejected an interpretation of the regulation that would require simultaneous findings. *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) ("To require proximity of findings would read a new requirement into the listing that is unsupported by the text, structure, medical practice, or common sense, and we decline to do so."); *see also Watson v. Comm'r of Soc. Sec. Admin.*, No. 8:14-CV-01310-TLW, 2015 WL 4192612, at *16 (D.S.C. July 9, 2015) ("Listing 1.04A requires a claimant to show only what it requires him to show: that each of the symptoms were present, and that the claimant has suffered or can be expected to

11

suffer from nerve root compression continuously for at least 12 months.  A claimant need not show that each symptom was present at precisely the same time—*i.e.,* simultaneously—in order to establish the chronic nature of his condition.") (citations omitted).

The record supports a finding that Mayberry suffered from degenerative disc disease and, as she argues, the ALJ's decision references evidence that seems to satisfy the criteria of Listing 1.04A.  (*See Pl.'s Brief in Support of Complaint to Review Decision of Social Security Administration* ("*Pl.'s Br.*") 6.)  The ALJ's reasons for finding that Mayberry failed to satisfy the Listing are insufficient.  Nonetheless, Mayberry bears the burden of proving that her impairments meet or equal the Listing, and she must show that she meets all of the criteria in the Listing.  *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).  The Court is not concluding that Mayberry has proven her impairments meet or equal Listing 1.04(A), but only that the ALJ's finding was not supported by sufficient reasoning.  The record does contain evidence that could support a finding that Mayberry did not meet or equal a listing.  (*See, e.g.*, R. 85-86 (state agency physician Dr. Whitley concluded that none of Mayberry's impairments met or equaled any listed impairment).) On remand, the ALJ should sufficiently articulate her reasoning for her step 3 finding.

The ALJ's insufficient analysis of whether Mayberry's impairments met or equaled a Listing precludes the Court from reviewing whether the step 3 determination is supported by substantial evidence.  Thus, a remand for further consideration is required.  For completeness, however, the Court proceeds to consider Mayberry's other contentions.

Mayberry argues that the RFC finding is erroneous because the ALJ "ignored without explanation the nonexertional limitations due to her pain and weakness, contrary to the opinions of her treating physicians corroborating her impairments." (*Pl.'s Br.* 10.) Yet Mayberry fails to identify the nonexertional impairments that the ALJ ignored. Nonexertional limitations concern an individual's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1). Examples of nonexertional limitations are difficulty maintaining attention and concentration and postural limitations. *Id.* The ALJ did find that Mayberry had nonexertional limitations and accounted for them in her RFC finding by limiting Mayberry to occasional crouching, crawling, climbing, and limiting her exposure to extreme temperatures, among other restrictions. (R. 21.) And Mayberry fails to identify any treating physician's opinion regarding a nonexertional limitation ignored by the ALJ. For example, treating physician Dr. Schmeiz determined in January 2014 that Mayberry could work "with no restrictions." (R. 795.) Mayberry has not shown that the ALJ ignored any nonexertional limitations.

Mayberry also challenges the ALJ's decision that she could perform her past relevant work, contending that it was contrary to Social Security Ruling 82-62. In particular, she argues that the ALJ failed to make findings as to the specific physical and mental demands of her past work and failed to find that her RFC would permit her to return to her past work. Mayberry asserts that the ALJ found only that her past jobs were unskilled, semi-skilled, and at the light exertional level, contrary to *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir. 1984), and *Nolen v. Sullivan*, 939 F.2d 516 (7th Cir. 1991).

13

Under Social Security Ruling 82-62, the determination of an individual's ability to perform past relevant work requires specific findings as to the individual's RFC, the physical and mental demands of the past work, and whether the individual's RFC would permit a return to that work. SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982); *see also Nolen*, 939 F.2d at 519 (reiterating "that the ALJ must specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks"); *Strittmatter*, 729 F.2d at 509 (stating that an ALJ "must ascertain the demands of [past relevant work] in relation to the claimant's present physical abilities"). Here, the ALJ made all three findings. (*See* R. 21 (assessing RFC), 26-27 (discussing Mayberry's past relevant work, her duties, the skill and exertional level of her past work, and finding that the exertional and nonexertional requirements of the work were consistent with her RFC).) Those findings were based on Mayberry's testimony about the duties of her past work and the VE's testimony as to the skill and exertional levels required of the past work. (*See* R. 27, 78-79.) In addition, the VE testified that an individual with the RFC found by the ALJ could perform Mayberry's past work as a security guard, a mail sorter and package sorter (as typically performed in the national economy though not as Mayberry said it was actually performed), as well as a phlebotomist. (R. 79-80.) The ALJ did not err at step 4.

## Conclusion

For the foregoing reasons, the undersigned recommends that the decision to deny benefits be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this recommendation.

## Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). The district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection may result in forfeiture of the right to *de novo* determination by the district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**The parties should not expect extensions of time to file either objections or responses. No replies will be permitted.**

So Ordered this date: 10/28/2015

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record